FILED
DISTRICT COURT OF GUAM
JUN 0 8 2004
MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

| | |
|---|---|
| J.C., a person with a disability, S.F., a person with a disability, and J.M., a person with a disability,<br><br>Plaintiffs,<br><br>v.<br><br>FELIX P. CAMACHO, in his official capacity as Governor of Guam,<br><br>ROSEANNE ADA, in her official capacity as Director of the Department of Integrated Services for Individuals with Disabilities, and<br><br>J. PETER ROBERTO, in his official capacity as Director of the Department of Mental Health and Substance Abuse,<br><br>Defendants. | No. CV 01-00041<br><br>**PERMANENT INJUNCTION** |

Pursuant to the findings of the Court issued on the record on March 16, 2004 and the supplemental findings issued concurrently herewith, the Court finds that a Permanent Injunction should be issued.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

In accordance with the Findings of Fact and Conclusions of Law filed concurrently herewith, to ensure that Defendants remedy the violations as to

Plaintiffs, Defendants are hereby enjoined from treating Plaintiffs in a manner that violates the constitutional and statutory rights of the Plaintiffs. To assure that Plaintiffs receive this constitutionally and statutorily prescribed treatment, the Court orders Defendants to provide treatment and develop programs for the Plaintiffs as set forth below.

 I. Safety, freedom from undue restraint, and treatment under safe conditions

 II. Minimally adequate or reasonable training to ensure safety, freedom from undue restraint, and to prevent a person's preexisting self-care skills from deteriorating because of his commitment

 III. Implementation and Placement Plans

This injunction is not intended to provide two sets of treatment and placement for residents of Defendants' facilities – one constitutional and lawful level of treatment for these Plaintiffs who brought a civil lawsuit and one substandard level for those individuals similarly situated in Defendants' facilities who have not yet had their rights adjudicated. To the extent that the Court is ordering minimum constitutional and legal standards of care and placement, these should be generally implemented to affect both Plaintiffs and those other individuals who are also inappropriately placed in the AIU. Because Defendants are aware of the unconstitutional and unlawful standards currently in place in their facilities, there is no basis for this Order not to be implemented as to all of those similarly situated to Plaintiffs.

**I.** **Safety, Freedom from Undue Restraint, and Treatment Under Safe Conditions**

A. Defendants shall provide for Plaintiffs a safe environment that meets the needs of the individual and ensures the greatest amount of freedom and opportunity with the least amount of risk.

2

B.  Defendants shall ensure compliance with all applicable Guam and federal codes and regulations governing fire safety, health, infection control, and sanitation.

C.  Defendants shall ensure that the environment is adequately hazard free, clean, and in good repair.

D.  The Defendants shall meet the basic care needs of the Plaintiffs, which includes providing adequate bathing, grooming, and cleaning, adequate oral hygiene, and nourishing meals according to their plans of care.

E.  The Defendants shall provide a safe and humane environment for each Plaintiff and shall commit to zero tolerance for abuse or neglect of residents, continually striving to ensure that individuals are free from abuse (including physical, sexual, emotional, or psychological abuse) and neglect.

G.  All incidents and injuries involving Plaintiffs shall be thoroughly documents.

H.  Defendants currently house, within the one environment, four different populations of individuals requiring 24-hour residential care: 1) individuals seeking short-term acute psychiatric care; 2) individuals with chronic mental illness who may require long-term care similar to Plaintiff S.F.; 3) individuals with developmental disabilities or dual diagnosis, individuals with developmental disabilities and mental illness similar to Plaintiffs J.C. and J.M.; and 4) individuals committed to the DMHSA through adjudication as individuals not guilty by reason of mental illness (NGRI). Appropriate actions to minimize effects, include, but are not limited to, segregation of the differing groups. The Defendants will ensure that:

1.  Assignment of bed space in double or multiple occupancy rooms shall not cause Plaintiffs to occupy rooms with individuals from other populations.

3

2. Where populations interact, contacts between populations shall be restricted through staff supervision and intervention.
3. Individuals with a history of or known predatory behavior shall never be provided with unsupervised opportunities to interact with Plaintiffs, to include shared rooms.

I. With respect to medical and dental care, professional judgment shall be exercised in making recommendations for treatment. That professional judgment shall not be influenced by considerations of the availability of services or of community-based residential treatment facilities.

J. The Defendants will provide adequate routine and emergency psychiatric mental health services to Plaintiffs who need such services. Psychotropic medication shall not be used as punishment, in lieu of a training program, for behavior control, in lieu of psychiatric or neuropsychiatric diagnosis, or for the convenience of staff. To these ends, Defendants shall within 180 days from the entry of this Order, unless otherwise noted, perform the following:

1. The psychiatrists shall serve on a Multi-Disciplinary Treatment Team ("MDTT") for any Plaintiff whose individualized service includes the use of behavior modifying medication or for whom such has been recommended;
2. Ensure that the psychiatrist(s) adequately review the current medication regimen of each Plaintiff under the care of the Defendants to determine whether the type and dosage of the medication is indicated by the Plaintiff's needs, and recommend any changes in the medication regimen; ensure that the psychiatrist(s) consults with the assigned psychologist to determine whether the existing behavior management program are indicated by the Plaintiff's needs and

4

whether different programs or interventions could be developed to address the Plaintiff's target behaviors and/or symptoms so as to reduce or eliminate the need for psychotropic medications; ensure that the psychiatrist(s) consults with the Plaintiff's primary care physician, psychologist, nurse, and other appropriate members of Plaintiff's MDTT, to determine whether the harmful effect of the Plaintiff's mental illness or developmental disability outweigh the possible harmful side-effects of the psychotropic medication and whether all reasonable alternate treatment strategies are likely to be less effective or potentially more dangerous than the medication; and require that the psychiatrist(s) document his or her evaluation results and conclusions. This review, consultation, and documentation shall be performed on a regular basis, or more often if indicated by the Plaintiff's individual needs;

3. Ensure that the psychiatrist(s) develop and sign as part of each Plaintiff's regular review process (or more often if indicated by the Plaintiff's individual needs) an overall treatment plan for each Plaintiff with a diagnosis of mental illness or developmental disability with a description of clear, objective and measurable short-term, intermediate and long-range goals and objective for each Plaintiff including time frames for the achievement of each;

4. Professional judgment shall be exercised in making recommendations for treatment and it shall not be influenced by considerations of the availability of services or of community-based residential treatment facilities.

K. The Defendants shall also ensure that Plaintiffs are free from undue bodily restraint. The Defendants shall ensure that restraints are not used as

5

punishment, in lieu of habilitation or skills training, as a behavior support plan, or as a learning-based contingency to reduce the frequency of a behavior. Restraints may only be used for medical reasons or when there is immediate risk of harm to self or others (*i.e.* to interrupt or terminate a seriously dangerous situation where injury could result).

L. The Defendants shall undertake the following measures:

1. The Defendants shall strongly discourage the use of four- and five-point restraint.[1]
2. Staff shall provide adequate supervision to any individual in restraints.
3. The plaintiffs' psychiatrist shall begin the regular practice of reviewing each use of unplanned mechanical, physical, or chemical restraint and ascertain the circumstances under which such restraint was used. The review shall take place within 24 hours by the Plaintiff's psychologist.
4. Any use of restraint on Plaintiffs under the care of the Defendants shall require the following:
    a. Immediate notification of an on-site supervisor upon the use of any restraints;
    b. Notification of and approval by a psychologist and/or nurse if any restraint is applied for longer than one hour;
    c. Timely assessment by a nurse to ensure the restraint is being safely applied and is reasonably tailored to the individual's

---

[1] Four-point restraints are generally defined as when a patient is placed on his back and his wrists and ankles are strapped to the bed to immobilize the patient. Five-point restraints are generally defined as four-point restraints with the addition of a strap or cloth device to restrict the patient's midsection.

6

behavior;

  d. Comprehensive review by the individual's treatment team, including psychologist, if an individual receives three or more restraints within a 30 day period.

5. Ensure chemical restraints meet appropriate levels of approval and oversight by a psychiatrist and/or physician prior to their administration. Staff shall collect adequate data on the medical and behavioral effects, as well as the side effects of each individual administration of such medications. The psychiatrist and/or physician shall consider the data collected when making future clinical intervention decisions.

6. Implement and maintain policy provisions regarding restraints that are utilized solely for medical, not behavioral, purposes.

7. Document each use of mechanical, physical, and/or chemical restraint, including the exact type of restrain or procedure used, as well as the length of time it was used. Documentation of each use of restraint shall be kept in the Plaintiff's file and in a central location.

## II. Minimally Adequate or Reasonable Training to Ensure Safety and Freedom From Undue Restraint, and to Prevent Deterioration

A. The Defendant shall provide adequate psychological and behavioral services including skills and positive behavioral support programs, to meet the individualized needs of each Plaintiff. These services shall be developed to ensure and protect Plaintiffs' right to training as an appropriate professional would consider reasonable to ensure Plaintiff's safety, to facilitate Plaintiff's ability to function free from bodily restraints, and to prevent a person's pre-existing self-care skills from deteriorating because of his commitment.

7

B.  The Defendants shall undertake the following measures:
   1. The Defendants shall conduct an interdisciplinary evaluation of each Plaintiff to determine the specific areas in which each individual needs training.
      a. These multi-disciplinary evaluations shall be repeated for all Plaintiffs' annual intervals, unless required more frequently by each Plaintiff's needs.
      b. Identify each Plaintiff who sustains or causes frequent injuries or is at risk of serious harm due to his or her behaviors. Prioritize these individuals for intervention, where appropriate, through skills training, positive behavioral supports, and other treatment modalities.
   2. Within 30 days of the completion of each Plaintiff's interdisciplinary evaluation, develop and implement a professionally-based, individualized skills training and support program for each Plaintiff.
C.  The Defendants shall provide Plaintiffs with adequate, appropriate and timely occupational therapy, physical therapy, speech therapy, or physical assistance support service to meet the individualized needs of Plaintiffs.
D.  Each Plaintiff in the Defendants' care and custody must receive a comprehensive evaluation of his or her medical, behavioral, habilitation and treatment needs, by competent professionals who are members of the MDTT. Collectively, these evaluations will form the basis of Plaintiff's individual support and transition plans.
   1. This process will result in a written plan containing a detailed description of the identity, location, frequency and duration of the services and supports needed by the individual.
   2. Each Plaintiff and his or her parent(s) or legal guardian(s) shall be

informed of the recommendations of the independent evaluation and the MDTT, including all feasible alternatives to the provision of services in a residential center.

3. Defendants will ensure that Plaintiffs are placed in an appropriate and safe manner and that placements in the community are adequate to meet the needs of the individual as presented in their MDTT.

4. Defendants shall ensure that the immediate community placement for each Plaintiff meets the needs of each Plaintiff. Under no circumstances will the speed or type of placement be governed by anything other than the interests of the individual being placed. Defendants may use existing community program vacancies only where they have determined that the program meets the needs of the Plaintiffs as identified in the Plaintiff's individual support plans. Defendants shall create or contract for a community program that meets the needs of the individual as identified in the individual support plan.

5. For each Plaintiff, an individualized transition profile should be developed by the MDTT. The transition profiles should contain the following elements: 1) individual's name, age, and sex; 2) communication ability/method/primary language; 3) diagnosis; 4) intellectual level and adaptive behavior level; 5) mobility; 6) hearing/vision acuity and dental status; 7) mealtime patterns and nutritional status; 8) type and frequency of supervision; 9) environmental adaptions/security needs; 10) general health condition and chronic and emergency health care needs; 11) preferred number and characteristics of housemates; 12) preferred geographic location; 13) description of the person's important relationships and the name,

9

location and frequency of contact of family and significant others; 14) anticipated adjustment issues; 15) supports and services needed for the individual's safety; 16) a description of the individual's personality, skills, and interests; 17) the things that the person must have and that, if not available, would result in obvious distress; 18) the person's spiritual and religious preferences; 19) the person's vocational interests.

### III. Implementation and Placement Plans

A. Defendants shall develop and implement a system for maintaining a waiting list for services, including residential placement. The system must integrate information from Defendants as well as from any contracted providers, and should incorporate information from any other independent organizations that provide the relevant services. Defendants shall establish a system of determining priorities within the waiting list so that it can be determined, at any given time, who is next in line to receive a desired service or residential placement. Contracted providers must abide by the waiting list system developed herein. Within 60 days of the issuance of this Order, Defendants shall submit to Plaintiffs and the Special Master for approval a proposed system for implementation of a waiting list.

B. The Defendants will develop a comprehensive implementation plan to develop community services and supports which will ensure prompt placement of Plaintiffs in appropriate living situations outside of the AIU. This comprehensive implementation plan shall be developed within 120 days of the issuance of this Order and submitted to the Special Master and Plaintiffs for approval. The participants in the development of this Plan shall include the parties to this Order, representatives designated by Plaintiffs, and representatives of service providers and vendor executives

10

and support staff. This implementation plan shall address the type and number of new facilities that must be developed, the source of funding for any new facilities and responsibility for applying for and obtaining such funding, and the ability to provide placements in existing facilities.

C. In order to ensure that there are waiting lists that move at a reasonable pace and that services are provided in conformity herewith, any services that are contracted must also be controlled by the mandates set forth herein. To that end, it is required that when Defendants choose to contract with providers outside of the Defendants' organizations, Defendants shall ensure, by contract, that the providers follow all of the requirements that Defendants must follow herein, including record keeping. Contract providers shall be subject to placement, treatment, and discharge decisions made by Defendants. Before contracting with other providers, there shall be a public hearing to allow comments and concerns to be voiced with respect to the proposed contract. Any proposal for contracting services or any proposal for issuing a "Request for Proposal" shall first be delivered to the Protection and Advocacy System of Guam.

D. Defendants shall survey all community-based programs and facilities operated or supported by Defendants in which Plaintiffs are placed pursuant to this Order at least annually to determine compliance with the requirements of this Order. Systemic reviews of the quality of services and supports available to these Plaintiffs must also occur on an annual basis. Defendants shall ensure that all deficiencies found in community placements are remedied promptly. The requirements of this Order shall be reflected in any future contracts or agreements or any renewal or amendment of a contract agreement with service providers and vendors.

E. A request can be made, by or on behalf of a Plaintiff, at any time to change a

11

community placement or service based on assertions of inadequate services or harm to the Plaintiff. Defendants shall take whatever steps are necessary to resolve the situation either by addressing the failings in the current community placement or by providing or developing an adequate and appropriate alternative placement. Within 60 days of this Order, Defendants shall develop policies and procedures (including grievance procedures) addressing procedure for changes in community placements and the return by individuals to the AIU. These policies and procedures shall be submitted to Plaintiffs and the Special Master for approval.

F. Within 60 days of the issuance of this Order, Defendants shall develop and submit to Plaintiffs and the Special Master, a plan to implement the minimum care requirements outlined in Sections I and II of this Order. This care services plan shall also contain a training component to develop the skills and competencies required for implementation of this Order. All training required by this Order shall be conducted by individuals with demonstrated expertise in the particular field and shall be documented as to attendance.

G. If Plaintiffs dispute any element of any of the plans submitted by Defendants for approval, the parties shall meet and confer within 15 days and attempt to resolve the dispute. The parties may then present the revised plan to the Special Master for approval.

H. Upon approval of each of the plans called for by this Order, Defendants are responsible for the immediate implementation of the Plan.

I.  If Defendants fail to place the Plaintiffs in a community-based facility within 180 days of the issuance of this Order, Defendants must appear before the Court to explain the basis thereof and may be subject to contempt sanctions for violations of this Court's Order.

IT IS SO ORDERED.

DATE: June 7, 2004



**CONSUELO B. MARSHALL**
**UNITED STATES DISTRICT JUDGE**

Notice is hereby given that this document was entered on the docket on 06/08/04.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: [signature]  06/08/04
Deputy Clerk   Date

13