1 | MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
2 | Attorneys at Law
238 A.F.C. Flores Street
3 | Suite 801, DNA Building
Hagåtña, Guam 96910
4 | Telephone:   (671) 472-2089/90
Facsimile:   (671) 477-5206
5 |
Attorneys for Defendants Felix P. Camacho,
6 | Rosanne Ada and Dr. Andrea Leitheiser

**FILED**
DISTRICT COURT OF GUAM

OCT 2 3 2008

JEANNE G. QUINATA
Clerk of Court

7 |          IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| 8   J.C., a person with a disability,<br>    S.F., a person with a disability, and,<br>9   J.M., a person with a disability, | CIVIL CASE NO. CIV01-00041 |
| 10            Plaintiffs, | |
| 11       vs. | |
| 12   FELIX P. CAMACHO, in his official<br>capacity as Governor of Guam, | **REPORT ON THE**<br>**REORGANIZATION OF**<br>**THE DEPARTMENT OF** |
| 13   ROSANNE ADA, in her official capacity as<br>14   Director of the Department of Integrated<br>Services for Individuals with Disabilities, | **MENTAL HEALTH AND SUBSTANCE**<br>**ABUSE AND THE DEPARTMENT**<br>**OF INTEGRATED SERVICES FOR**<br>**INDIVIDUALS WITH DISABILITIES** |
| 15   DR. ANDREA LEITHEISER, in her<br>16   official capacity as Acting Director of the<br>Department of Mental Health and<br>17   Substance Abuse, | |
| 18           Defendants. | |
| 19   R.A., a person with a disability, | *as previously consolidated with*<br><br>CIVIL CASE NO. CIV04-00005 |
| 20          Plaintiff, | |
| 21   FELIX P. CAMACHO, in his official<br>capacity as Governor of Guam, | |
| 22   ROSANNE ADA, in her official capacity as<br>23   Director of the Department of Integrated<br>Services for Individuals with Disabilities, | |
| 24   DR. ANDREA LEITHEISER, in her<br>25   official capacity as Acting Director of the<br>Department of Mental Health and<br>26   Substance Abuse, | |
| 27           Defendants. | |
| 28 | |

**ORIGINAL**

COME NOW the Defendants to this case, pursuant to the Court's request made at the Status Hearing held on October 9, 2008, and hereby submit the Governor's report on the Reorganization of the Department of Mental Health & Substance Abuse and the Department of Integrated Services for Individuals with Disabilities, prepared by the Office of the Governor of Guam, for the Court's consideration.

Respectfully submitted this 23rd day of October, 2008.

**MAIR, MAIR, SPADE & THOMPSON**
A Professional Corporation
Attorneys for Defendants

By _____
**JOEPHET R. ALCANTARA**

P089030.JRA.wpd

2



*Office of the Governor of Guam*

P.O. Box 2950 Hagåtña, Guam 96932
TEL: (671) 472-8931 • FAX: (671) 477-4826 • EMAIL: governor@mail.gov.gu

Felix P. Camacho
*Governor*

Michael W. Cruz, M.D.
*Lieutenant Governor*

MAIR, MAIR, SPADE
& THOMPSON

OCT 2 3 2008

TIME: 5:00
REC'D BY: MQ

2 2 OCT 2008

## MEMORANDUM

**TO:**   David A. Mair, Esq.
Mair, Mair, Spade & Thompson, P.C.
238 A.F.C. Flores St.
DNA Bldg., Suite 801
Hagåtña, Guam 96910

**FROM:**   Shannon Taitano Lujan, Esq.
Legal Counsel
Office of the Governor

**SUBJECT:**   Reorganization of the Department of Mental Health & Substance Abuse
("DMHSA") and the Department of Integrated Services for Individuals
with Disabilities ("DISID")

Pursuant to the court's request, submitted herein is a description of the reorganization process and the laws related to the reorganization of the executive branch of the government of Guam by the Governor of Guam. Also provided herewith are Attorney General Opinions regarding the Governor's authority to reorganize the executive branch based on the Organic Act and the laws of Guam.

The authority given to the Governor to reorganize the executive branch of the government of Guam is found in the Organic Act of Guam. The Organic Act requires the Governor of Guam to examine the organization of the executive branch of the government of Guam, and carry out necessary changes to promote effective management and to execute faithfully the purposes of the Organic Act and laws of Guam. *48 U.S.C. § 1422c(c).*

Guam law also addresses government reorganization by establishing a process by which to implement a reorganization plan. Guam law requires a public hearing at least 30 days prior to the implementation of a reorganization plan. It also requires public notice of such hearing in a newspaper of general circulation within Guam and written notice to each employee of the department to be reorganized 14 calendar days prior to the hearing. *Chapter 11 of Title 5 of the Guam Code Annotated.*

Guam law allows employees the opportunity to review the proposed reorganization plan prior to the hearing. It also affords employment security to employees affected by government reorganization.

Attached to this letter are copies of the statutes relevant to government reorganization for easy reference.

The Governor will be executing the Executive Order to begin the process for the reorganization of the Department of Mental Health & Substance Abuse and the Department of Integrated Services for Individuals with Disabilities. Upon enactment of the Executive Order, a public hearing will be held as provided in the notice of hearing published and provided to affected employees within the time required by law. Upon conclusion of the hearing and consideration of any comments elicited at the hearing, the reorganization of the Department of Mental Health & Substance Abuse and the Department of Integrated Services for Individuals with Disabilities will be effectuated.



**Douglas B. Moylan**
Attorney General

# Office of the Attorney General

August 5, 2003

Received By
Francisco Ssabryn
8/5/03
11: 41 A

Honorable Frank B. Aguon, Jr.
Vice Speaker
Chairman, Committee on Appropriation & Budgeting,
 General Governmental Operations, Reorganization & Reform
*I Mina'Bente Siete Na Liheslaturan Guåhan*
Suite 101-A, Ada's Commercial & Professional Center
118 East Marine Drive
Hagatna, Guam 96910

SUBJECT: Governor's and Legislature's Powers in Reorganization

Dear Senator Aguon,

On July 31st, 2003, you asked if the Governor can, by Executive Order, require the Legislature to appropriate funds to agencies that do not "officially exist". You also asked what are the specific Executive and Legislative Branch responsibilities to contribute toward permanent structural change in the Government of Guam.

The second question requires too much speculation on our part, since we know little about the proposed reorganization save the twelve cabinet departments that will be responsible for the functions of the many current separate departments and agencies. Thus, I cannot provide you with such a list.

The first question is clearer, but will not affect Executive Order 2003-24, since that Order will have no impact upon public laws by this order because it reorganizes nothing. It directs a "concerted and consolidated effort" by all to achieve a reorganization plan in accordance with the Governor's outline. Likewise, assessments are required and are to be communicated to the Governor's Reorganization Task Force. This Order accomplishes no reorganization. What can be done by the Governor and what must be legislated will be determined later, when the final plan is in place.



**FILE**
AG chron

The reorganization power of the Governor is probably the one unique power given to the Governor under the Organic Act. Federal and state reorganizations either start with legislation or end with it. In Oklahoma, the Governor can reorganize his cabinet (but not the underlying agencies) within a certain period after election according to their constitution. But only here is the Governor not only given the power to reorganize but the direction to carry it out. Case law from other jurisdictions interpreting powers vested in the Governor alone make clear that when a constitution vests powers in the Governor, that means other branches cannot regulate that particular function.

> [Organic Act] 48 U.S.C. § 1422c(c) provides:
> The Governor shall, from time to time, examine the organization of the executive branch of the government of Guam, and *shall determine* and *carry out* such changes therein as are necessary to promote effective management and to execute faithfully the purposes of this chapter and the laws of Guam. [Emphasis added]

The leading statement on the parameters of the Governor's reorganization powers under the Organic Act is found in *Laguana v. GVB*, 725 F.2d 519 (CA9, 1984) at p. 520:

> However, the Organic Act does not bestow on the Governor the authority to create separate agencies or instrumentalities. The power to modify a public entity previously created by the legislature is not the same as a power to create a new entity. That necessarily remains a legislative function.

However, to say that the Legislature may freeze the Governor's ability to reorganize by creating an agency by statute, which is part of the former's powers, is to nullify one portion of the Organic Act. This cannot be done, since the Organic Act serves as our Constitution and is superior to any local law.

Back in 1958 the Department of Interior advised the then-appointed Governor on these reorganization powers. Indeed, in 1952, Carlton Skinner reorganized the Customs Divisions, taking it from one agency and putting it in another, by executive action, an "Executive Memorandum 33-52". This was because the Legislature had abolished all customs duties thus leaving the Division with no collection functions. See *People v. Sugiyama*, 846 F.2d 570, amended in 859 F.2d 1428 (CA9, 1988).

The 1958 DOI memorandum said that the Governor can not only reorganize the government by sending various functions from one place to the other, but, so long as appropriations can be identified with these functions, use these even though they were

made to the department that is losing a function. The Governor may not change a substantive duty or function, however.

At the next budget session, the Legislature would then appropriate to the receiving agency the moneys for the personnel, equipment and functions transferred. Likewise, it should amend the law to reflect the executive changes. An example of what the Governor can do is to transfer a number of functions, along with their personnel and equipment and funding, to another agency to accomplish his consolidation, but he cannot create a new agency – only the Legislature can do that.

Sincerely yours,

*Joseph A. Guthrie for*

DOUGLAS B. MOYLAN
Attorney General



CHARLES H. TROUTMAN
CONSUMER COUNSEL -
DEPUTY ATTORNEY GENERAL

# OFFICE OF THE ATTORNEY GENERAL

September 30, 2005



MEMORANDUM

To:        Governor Felix P. Camacho
           Lieutenant Governor Kaleo S. Moylan

From:      Charles H. Troutman

Subject:   Reorganization - Historical Guidance

Recently I came across the attached memo form the Department of Interior regarding how the Governor (who was appointed at the time of the original memo) could reorganize the government on his own, and limits on that power. The Organic Act has not changed in this regard since, so you might find this useful.

*Charles H. Troutman*

CHARLES H. TROUTMAN

287 WEST O'BRIEN DRIVE, HAGÅTÑA •GUAM 96910 • U.S.A.•
(671) 475-3324 X170 • (671) 477-3390 (FAX) • CTROUT@ITE.NET



# United States Department of the Interior



OFFICE OF TERRITORIES
WASHINGTON, D.C. 20240

APR 23 1971

Hon. Carlos G. Camacho
Governor of Guam
Agana, Guam

Dear Governor Camacho:

Enclosed are copies of opinions emanating from the Office
of the Solicitor, U.S. Department of the Interior, with
regard to the interpretation of Section 9(c) of the Organic
Act of Guam.  You requested copies of these opinions in your
letter of April 16.

Sincerely yours,

Elizabeth P. Farrington

Elizabeth P. Farrington
Director

Enclosures



**DEPARTMENT OF THE ̄ ̄ ̄OR**
OFFICE OF TERRITORIES

Hon. Manuel F. L. Guerrero
Governor of Guam
Agana, Guam

~~~ 30 1965

Dear Governor Guerrero:

We enclose herewith an opinion of December 15, 1965 of the Acting
Assistant Solicitor, Territories, on some of the legal questions
raised by your letter of September 29, 1965. On the basis of this
opinion, and with specific reference to the usual form of appro-
priations of the Guam Legislature for specific departments of your
government, it is clear that you cannot, in the case of lump sum
appropriations, transfer functions and the funds to perform these
functions from place to place, because you have not been authorized
to expend any particular portion of such lump sum appropriations
for any particular function, nor, following repeal of section 9118.2,
do you have general authority to transfer any portion of appropria-
tions from one department to another.

If the Guam Legislature were to enact appropriations bills in the
detailed form that frequently characterizes appropriation acts of
the Virgin Islands Legislature, then, as the opinion indicates,
the function and the identifiable funds for such function may be
transferred from one department to another; in that event, the
funds expended for a particular function still will be exactly as
specified by the Legislature. Or, if an appropriation act is
concerned only with a particular board or independent agency and
the funds for its operation, we see no objection, in view of the
Acting Assistant Solicitor's opinion, to reorganization that
places the independent board or agency under the administrative
supervision of another department, provided again expenditures
for the operation of such independent board or agency do not ex-
ceed the appropriation authorized by the Legislature, and no part
of such appropriated funds are expended for any other purpose.

To simplify further, let us outline some hypothetical transfer problems:

(1)  Department A and Department B each have received their appropriations in a lump sum.  Because of the importance of programs under the jurisdiction of Department B, the Governor would like to transfer some funds from a less essential program of Department A to the more urgently needed programs of Department B.  Since repeal of section 6113.2 of the Guam Code (pursuant to the holding in the Bordallo case that item veto authority may not be used to veto such repeal), the Governor has no authority to effect the transfer of funds.

(2)  Department A has received a total appropriation of $1 million to perform functions X, Y and Z, which are listed in the appropriation act by description only.  The Governor proposes to transfer function Y to Department B and to authorize expenditures of $200,000 for this purpose. This also the Governor may not do, because the Legislature did not authorize expenditure of $200,000 specifically for function Y.  Conceivably, such expenditure might be less than $200,000 if performed in Department B by the personnel assigned to perform functions Y and Z.

(3)  The appropriation act for Department A reads as follows:

function X, 10 persons, appropriation $300,000;
function Y,  7 persons, appropriation $200,000;
function Z, 15 persons, appropriation $500,000

The Governor wishes to transfer function Y to Department B and spend $200,000 for the performance of function Y.  The reorganization may be effected pursuant to section 9 (e) of the Organic Act and the seven employees thereafter will be "detailed" to Department B and supervised by the head of that Department.  Their salaries and any other expenditures for the performance of their function (supplies, equipment, travel) will be paid from funds appropriated to Department A for the performance of function Y.  Since there is no authority for the transfer of appropriated funds from department to department, the disbursing officer of Department A would retain control of the funds.

-2-

Hypothetical (3) thus would permit the type of reorganization, with funds retained by the transferor agency, discussed in the last paragraph of your September 29 letter. It must be emphasized, however, that this type of reorganization becomes possible only if the original appropriation act identifies the function and the fund authorized for performance of the function in adequate detail. If because of the single item form of Guam appropriation bills, hypothetical (3) is not a realistic method of implementing the type of reorganization needed and otherwise authorized in section 9 [9?], then the only practical solution to your problem is to propose both the reorganization, and the rearrangement of executive branch funds necessitated by such reorganization, in the next budget presentation to the Legislature.

                                    Sincerely yours,

                                    (Sgd.) Mrs. Ruth G. Van Cleve

                                    Mrs. Ruth G. Van Cleve
                                    Director

Enclosure

-3-



Carl T.C. Gutierrez
*Maga'låhi*
*Governor*

Madeleine Z. Bordallo
*Tiñente Gubetnadora*
*Lt. Governor*

John F. Tarantino
*Hiniråt Abugao*
*Attorney General*

Kathy E. Maher
*Atkådi Sigundon, Dibision Inabison, Gubetnamento*
*Chief Deputy, Solicitors Division*

**Ufisinan Hiniråt Abugao**
**Guåhan**

**Office of the Attorney General**
**Guam**

Deborah Rivera
*Sigundo Dibision Inabison Gubetnamento, Atko*
*Acting Deputy, Solicitors Division*

October 19, 1999

Memorandum (Opinion)                    REF: GOV-991308

To:          The Honorable Carl T.C. Gutierrez
             Governor of Guam

From:        Attorney General

Subject:     Reorganization of the Government of Guam Pursuant to Public Law No. 25-72, §20

*Buenas!* You have asked for information concerning the Governor's reorganization authority as
follows:

**REQUEST:**   What are the powers and limitations of the Legislature and the Governor in the
               reorganization of the Government of Guam pursuant to §20 of Public Law No. 25-
               72?

**ANSWER:**    The Governor has the authority pursuant to the Organic Act to reorganize
               departments, agencies and other executive instrumentalities of the Government of
               Guam without legislative consent. However, the Legislature has the power to pass
               legislation not inconsistent with the Organic Act and other laws of the United States
               applicable to Guam including the power of monetary appropriation. Therefore, the
               Legislature creates public entities within limits and defines by legislation whether an
               agency or department is an executive instrumentality of the Government of Guam,
               and controls the size of the government by the power to restrict monetary
               appropriation.



**Commonwealth Now!**
Suite 2-200E, Judicial Center Bldg., 120 West O'Brien Drive, Hagåtña, Guam U.S.A. 96910

## STATEMENT OF FACTS:

Among other things, Public Law No. 25-72 is an appropriations act purporting to provide by subsequence legislation, in cooperation with the administration and the executive branch, a bill to reduce the government of Guam by no less than fifty percent (50%) through a government wide reorganization. Roundtable discussions are mandated to produce legislation accomplishing the reorganizational purposes detailed in §20 within sixty days of the Act's effective date. The specific powers and duties of the Legislature and the executive are not effectively defined.

## DISCUSSION:

The Organic Act functions as Guam's constitution and the Legislature may not pass laws inconsistent with the powers of each of the three branches of government. As limited by §1421a of the Organic Act, "the government of Guam shall consist of three branches, executive, legislative, and judicial." The separation of powers of these three branches is considered more strict under the Organic Act than under the U.S. Constitution. See, *People v. Camacho*, 1 Guam R. 501 (Sup. Ct. 1975).

Section 1423a of the Organic Act concerns the scope of the Legislature's authority and provides, in pertinent part, that "The legislative power of Guam shall extend to all rightful subjects of legislation not inconsistent with the provisions of this chapter and the laws of the United States applicable to Guam."

The Governor, on the other hand, as head of the executive branch, is vested with "[t]he executive power of Guam" and "shall have general supervision and control of all the departments, bureaus, agencies and other instrumentalities of the executive branch of the government of Guam." 42 U.S.C. §1422.

The executive power is the power to execute laws, that is, carry laws into effect, as distinguished from the power to make those laws, or to judge them. See, generally, 16 Am.Jur.2d *Constitutional Law* §303. In fact, however, the power to legislate or to make laws is generally considered "the most important of all the powers of government" and "has been characterized as the vital function which animates, directs, and controls the whole operation of civil authority." See, generally, 16 Am.Jur.2d *Constitutional Law* §318. Legislatures are limited only by the provisions of the constitution, and if no limitations exist, then "the legislative will is supreme and must be obeyed by all other departments of the government." See, generally, 16 Am.Jur.2d *Constitutional Law* §319.

With respect to the organization of the executive branch of the government of Guam, our Organic Act has specifically delegated to the Governor, as head of the executive branch, the following authority pursuant to §1422c(c), which is entitled "Reorganization":

> The Governor shall, from time to time, examine the organization of the executive branch of the government of Guam, and shall determine and carry out such changes therein as are necessary to promote effective management and to execute faithfully the purposes of this chapter and the laws of Guam.

Thus, excluded from one of those "rightful subjects of legislation" is the Legislature's authority to pass legislation which would usurp the Governor's authority as provided for in §1422c(c). Hence, while the Guam Legislature may rightfully pass legislation to create instrumentalities of the government of Guam, and to create mandates for these government instrumentalities outlining their purposes or functions in a general sense, the Guam Legislature's authority does not extend to deciding how an executive branch agency may be better organized and to carrying out any changes to better organize the agency. The Legislature only determines whether an agency or department is an instrumentality of the executive branch of the government of Guam. See, e.g., *Roberto v. Bordallo*, 839 F.2d 573, 574 (1987); *Laguana v. Guam Visitors Bureau*, 725 F.2d 519, 521(1984).

The Legislature also does not have the power to require the Governor or any executive instrumentality of the government of Guam to obtain the Legislature's consent to reorganize said instrumentality or instrumentalities. In §12 of Public Law No. 20-65, the Legislature added §5302(a) to the Government Code of Guam (later recodified as 5 GCA §11103). Section 11103 requires legislative approval for any reorganization of a department, agency, or instrumentality of the government of Guam. In an Attorney General Opinion to the Director of the Department of Public Health and Social Services dated March 6, 1990 (Ref: PHSS 90-0191), we opined that §11103 violated the separation of powers doctrine because the Organic Act specifically delegates to the Governor, and not the Legislature, the authority to organize the executive branch. Thus, the Legislature may not encroach on the Governor's authority by requiring the Governor's reorganization plans to be submitted for legislative approval. Likewise, government agencies are not required to submit their reorganization plans for legislative approval. As we said in our prior opinion:

> The executive power is always subject to check by the terms of the legislation that authorized it, and if that authority is exceeded, it is open to judicial review as well as the power of the (U.S.) legislature to modify or revoke the authority entirely. See e.g. *INS v. Chadha*, 103 S.Ct. 2764 (1983).

Attorney General of Guam Opinion PHSS 90-0191 dated March 6, 1990 at page 5.

The authority to reorganize the executive branch is not the same as the authority to create a separate agency of the government of Guam. The creation of agencies and instrumentalities of the government of Guam is strictly a legislative function. The Organic Act does not bestow upon the Governor the authority to create separate agencies or instrumentalities. *Laguana v. Guam Visitors Bureau*, 725 F.2d 519, 521(1984). The power to modify a public entity previously created by the Legislature is not the same as the power to create a new entity. The Governor has no authority to create a separate agency of the government of Guam by executive order. *Roberto v. Calvo*, Dist. Ct. (Judge Cristobal Duenas,1986), *aff'd. Roberto v. Bordallo*, 839 F.2d 573, 574 (1987).

Once the legislature has created the executive agency or department, the Governor has exclusive authority to reorganize the departments or agencies in any manner that complies with the legislative purposes delineated in the legislation establishing the legislative mandate to the executive. However, the one clear qualification upon the reorganizational authority of the Governor is the merit

system mandated by the Organic Act.[1] The civil service law in 6 GCA §4201 requires that classified employees may only be removed for cause, which limits both the executive and the Legislature if a reorganization affects an employee's pay or substantive duties.

Additionally, the Legislature may have concurrent authority over the functions of certain agencies such as the Department of Education and Guam's public school system pursuant to §1421g(b) of the Organic Act. This section states that the government of Guam shall provide an adequate public educational system, and to that end shall establish, maintain, and operate public schools according to the laws of Guam. Prior to 1986, the same section of the Organic Act read, "The Governor shall provide an adequate public educational system of Guam, and to that end shall establish, maintain and operate public schools at such places in Guam as may be necessary." [Emphasis added.] Superior Court of Guam Judge Tydingco-Gatewood, at one point, issued a decision under the current Organic Act section which states that the government of Guam, generically, shall provide an adequate educational system. The legislature had passed an elected school board statute, in Public Law No. 22-42, which was challenged by the executive and others. Judge Tydingco-Gatewood decided that the Department of Education was not a part of the Executive Branch of the government of Guam. See, *Tainatongo v. Territorial Board of Education*, Special Proceedings Case No. SP114-95, consolidated with *Gutierrez, et al. v. Territorial Board of Education, et al.*, CV1383-95, Decision at page 15 (September 11, 1996). More recently, the Guam Legislature has placed the Department of Education directly under the Governor and, thereby, back into the Executive Branch, extinguishing the Board of Education. See, Public Law No. 25-03, §18 (1999). However, the Legislature could recreate a Board or Boards of Education at any time. Congressional legislative history does not indicate Congress intended for the Governor to have exclusive power over Guam's school system even prior to amendment of the Organic Act in 1986. See, *e.g., Brown v. Civil Service Commission*, 818 F.2d 706,709 (9th Cir.1987). However, the educational instrumentality must be in the government of Guam.

In *Bordallo v. Baldwin*, 634 F.2d 932 (9th Cir 1980), the Guam Legislature attempted to create a hospital board of trustees consisting of members chosen by private organizations whom the Governor was required to appoint. However, because the Organic Act gives the Governor the power to establish hospitals and a public health system, the court decided that if the Governor has no power to choose the members of the hospital board, then an executive function is being encroached upon by the Legislature, and any such law is inorganic as being violative of §1421g(a). Additionally, the Legislature may not limit the Governor's organic power to remove executive department heads as delineated in 42 USC §1422. *Territorial Prosecutor v. Superior Court of Guam*, 1983 WL 30224, at 6 (D. Guam A.D.1983).

Based upon §1423j of the Organic Act, the Guam Legislature has plenary or absolute power over appropriations, and it may attach conditions upon the expenditure of appropriated funds. Section 1423j(a) provides:

---

[1] 48 U.S.C.§1422c(a) provides, in pertinent part, "The legislature shall establish a merit system and, as far as practicable, appointments and promotions shall be made in accordance with such merit system."

Appropriations, except as otherwise provided in this chapter, and except such appropriations as shall be made from time to time by the Congress of the United States, shall be made by the legislature.[2]

See, also, *Santos v. Calvo*, 1982 W.L 10790 at 3 (D. Guam A.D. 1982).

The Legislature may determine and control the level of funding by appropriation, and it may refuse thereby to fund specific agency functions. Once an appropriation has been made for a specific purpose or function, however, the Legislature no longer has control over how the Governor determines to deliver the service or accomplish the function within the structure of the instrumentalities of the executive branch established by the Legislature.

Nevertheless, the Legislature may change the establishment of functions or purposes by legislation not inconsistent with the Organic Act. As the court indicated in *Bordallo v. Balwin*, *supra* at 934, the Legislature may determine whether a hospital shall exist at all, and how large it will be, and the size and qualifications for the governing body, but the Legislature may not remove the ultimate responsibility for governance of the hospital given to the Governor in the Organic Act.

Thus, the Governor has the prerogative to determine the organizational structure of the agencies and departments the Legislature has created. Additionally, the Governor has the organic power to restructure and reorganize the executive branch instrumentalities of the government of Guam to effectively and efficiently carry out the mandate of the legislature in creating them.

A reorganization has been defined by the Guam Legislature in 5 GCA §11103(b) as:

1. The transfer of a whole or any part of an agency, or of the whole or any part of the functions thereof, to the jurisdiction and control of any other agency;

2. The abolition of all or any part of the functions of any agency;

3. The consolidation or coordination of the whole or any part of the functions of any agency, or the whole or any part of any other agency or the functions thereof;

4. The consolidation or coordination of any part of any agency or the functions thereof with any other agency or the functions thereof;

5. The authorization of any non-elective officer to appoint any individual to perform any functions;

6. The abolition of the whole or any part of any agency which agency or part does not have, or upon the taking effect of a reorganization plan will not have, any function;

---

[2]48 U.S.C. §1423j(b)states in pertinent part... "If at the termination of the fiscal year the legislature shall have failed to pass appropriation bills providing for payments of the necessary current expenses of the government and meeting its legal obligations for the insuing fiscal year, then the several sums appropriated in the last appropriation bills for the objects and purposes therein specified, so far as same may be applicable shall be deemed reappropriated, item by item." Compare the 1st reorganization amendment the three month budget in the current appropriations act is organic in light of this section.

7. The establishment of a new agency to perform the whole or any of the functions of an existing agency or agencies; or

8. The use of a person under contract to perform functions which regularly are performed or budgeted to be performed by employees appointed under the merit system.

Under this definition of reorganization, the Guam Legislature would have the power to determine whether an instrumentality of the government of Guam shall exist at all and as explained in *Laguana, supra.* However, the Governor may then reorganize such agencies and their functions pursuant to his Organic Act powers to reorganize the government from time to time. A realignment by the Governor, where he streamlines a department by reassigning personnel and functions without substantive changes, would not require coordination with the Legislature. See, Attorney General of Guam Opinion Ref: LEG 85-0106 dated February 4, 1985.

However, the Governor would not have realignment authority as to agencies outside the executive branch and the government of Guam for that matter.

For example, in addressing the Guam Visitors Bureau, the 9th Circuit held that the removal of the Guam Visitors Bureau from the Governor's control and supervision did not infringe upon the Governor's powers over executive instrumentalities of the government of Guam pursuant to the Organic Act. *Bordallo v. Reyes*, 763 F.2d 1098 (9th Cir. 1985). This is because the Legislature had created the Guam Visitors Bureau as a "public corporation" which was not a government entity.

On the other hand, when the Legislature created the Guam Telephone Authority, the Guam Power Authority, and the Guam Airport Authority, it specifically designated these agencies by law as instrumentalities of the government of Guam.

Certainly, the Legislature is not legally required to place an agency under executive supervision at all unless the agency's purposes or functions are specifically outlined or mandated as an executive function pursuant to the Organic Act. When an agency does have executive duties and functions, the legislature then must place it in the executive branch under the doctrine of separation of powers. The legislature cannot delegate such powers and then veto executive decisions or delegate executive power to a legislative agent as though the government entity thus created was an instrumentality of the legislative branch because the foundation of the Constitutional doctrine of separation of powers prohibits such control. *See, Metropolitan Washington Airports Authority, et al. v. Citizens for the Abatement of Aircraft Noise*, 111 S. Ct. 2298, 2311-2312 citing *Springer v. Philippine Islands,* 48 S.Ct. 480 (1928) and *Bowsher v. Synar,* 106 S.Ct. 3181,3187(1986).

**CONCLUSION:**

Since the Legislature has the power to withdraw mandates, change government purposes, and abolish agencies, the executive would be prudent in coordinating any defined "reorganization" with the Legislature. Such coordination would insure, at least in the short term, that the Legislature would

not respond with a law abolishing an agency reorganized by the executive altogether or changing its mandate, purposes and functions. Even with the Governor's reorganization power, laws may need change regarding the specifics of a given function and duties. However, under the Organic Act (constitutional)doctrine of separation of powers specifically delineating three branches of the government of Guam, the legislature has a duty to designate any agency or department with governmental functions, that are executive in nature, as an instrument of the executive branch. Without coordination, the checks and balances of the Executive and Legislative Branches could result in a stalemate under the mandate of Public Law No. 25-72, §20 which reduces the government of Guam by no less than fifty percent, and could end up costing more in time than savings in money. Genuine cooperation between the legislative and executive branches, keeping the guidelines of the separation of powers doctrine in mind, could produce significant changes and improvements in the streamlining of the government, and a cost savings necessary for the survival of a viable government of Guam in our harsh economic times.

This opinion should be read together with my May 27, 1999 Memorandum Opinion entitled "Review of Public Law Nos. 24-327 and 25-03 Pertaining to Restriction of the Governor's Employment Authority for Executive Agencies", a copy of which I have attached for your review.

*Dångkolo Na Agradesimiento!*

JOHN F. TARANTINO

991263
KEH\tst



GOVERNMENT OF GUAM
AGANA, GUAM 96910

February 25, 1987

RECEIVED

MAR 0 8 1990

GUAM TERRITORIAL
LAW LIBRARY

AG 87-0050

To:        Attorney General

Via:       Solicitor

From:      Assistant Attorney General

Subject:   Reorganization of GovGuam Departments, Agencies or
           Instrumentalities

This memorandum is in response to your memorandum of January 20,
1987, in which you requested information on the following:

REQUEST NO. 1:   Define "reorganization" as that term is used in
                 GC §5300, added by P.L. 17-81:14.

ANSWER:          See discussion.

REQUEST NO. 2:   Does the moving of an employee from one division
                 to another constitute a "reorganization"?

ANSWER:          No, so long as such movement does not involve the
                 transfer, consolidation or abolition of existing
                 agency functions.

DISCUSSION:

Public Law 17-81:14 added GC §§5300 and 5301 regarding government
reorganizations.  These provisions provide:

    §5300.  Any Reorganization Plan for a department,
    agency or instrumentality of the government of Guam
    which is proposed by the Governor or by a department,
    agency or instrumentality must have a public hearing at
    least thirty (30) days prior to the implementation of
    such plan.  Public notice of such hearing, including
    publication in a newspaper of general circulation
    within the Territory and including written notice to
    each employee of the department, agency or instrumen-
    tality in which the plan is to be implemented shall be
    provided at least fourteen (14) calendar days prior to
    the holding of such hearing.  Employees shall have full
    opportunity to review the proposed reorganization plan
    prior to the hearing.

§5301. No classified employee at the time a reorganization plan is adopted shall be removed from his or her position or downgraded as a result of any reorganization undertaken pursuant to the plan.

Although the Legislature has set forth statutory notice and hearing requirements as conditions precedent to the effective implementation of any government reorganization plan, it has failed to define the term "reorganization." "If a word that should be defined in a statute is not, then its commonly accepted meaning is applied." Sutherland Stat. Const. §47.07 (4th Ed.). An examination of the California statute on government reorganizations provides one such commonly accepted meaning of the term reorganization. California Government Code §12080(b) provides:

(b)  "Reorganization" means:

(1)  The transfer of the whole or any part of any agency, or of the whole or any part of the functions thereof, to the jurisdiction and control of any other agency; or

(2)  The abolition of all or any part of the functions of any agency; or

(3)  The consolidation or coordination of the whole or any part of any agency, or of the whole or any part of the functions thereof, with the whole or any part of any other agency or the functions thereof; or

(4)  The consolidation or coordination of any part of any agency or the functions thereof with any other part of the same agency or the functions thereof; or

(5)  The authorization of any nonelective officer to delegate any of his functions; or

(6)  The abolition of the whole or any part of any agency which agency or part does not have, or upon the taking effect of a reorganization plan will not have, any functions.

(7)  The establishment of a new agency to perform the whole or any part of the functions of an existing agency or agencies.

While we would prefer to see the Guam Legislature define the term "reorganization" by statute, until it does so we believe that the above provision may be used as a guide to the meaning of the term reorganization for purposes of GC §§5300 and 5301.

In essence, the following are the kinds of changes which, when proposed by the Governor or by a department, agency or instrumentality, should be assumed to constitute a reorganization and trigger the notice and hearing requirements of §5300:

    1.  The transfer of any part of an agency or of any agency functions to another agency.

    2.  The consolidation of any part of an agency with any other part of that or another agency.

    3.  The consolidation of any agency functions.

    4.  The abolition of all existing functions of any agency or part thereof.

    5.  The creation of a new agency to perform any or all functions of an existing agency.

Changes, then, which affect existing agency structure or functions probably should be regarded as reorganizations for purposes of §5300. However, a minor change such as moving an employee from one division to another, where such change does not involve the transfer, consolidation or abolition of existing agency functions, should not be considered to be a §5300 reorganization. See previous related opinions attached.

TIMOTHY M. CHANDLER

Attachments

TC2/6M/rsp



# United States Department of the Interior

OFFICE OF TERRITORIES
WASHINGTON, D.C. 20240



APR 2 3 1971

Hon. Carlos G. Camacho
Governor of Guam
Agana, Guam

Dear Governor Camacho:

Enclosed are copies of opinions emanating from the Office
of the Solicitor, U.S. Department of the Interior, with
regard to the interpretation of Section 9(c) of the Organic
Act of Guam. You requested copies of these opinions in your
letter of April 16.

Sincerely yours,

Elizabeth P. Farrington
Director

Enclosures



DEPARTMENT OF THE INTERIOR
OFFICE OF TERRITORIES

Hon. Manuel F. L. Guerrero
Governor of Guam
Agana, Guam

DEC 30 1965

Dear Governor Guerrero:

We enclose herewith an opinion of December 15, 1965 of the Acting
Assistant Solicitor, Territories, on some of the legal questions
raised by your letter of September 29, 1965. On the basis of this
opinion, and with specific reference to the usual form of appro-
priations of the Guam Legislature for specific departments of your
government, it is clear that you cannot, in the case of lump sum
appropriations, transfer functions and the funds to perform these
functions from place to place, because you have not been authorized
to expend any particular portion of such lump sum appropriations
for any particular function, nor, following repeal of section 6113.2,
do you have general authority to transfer any portion of appropria-
tions from one department to another.

If the Guam Legislature were to enact appropriations bills in the
detailed form that frequently characterizes appropriation acts of
the Virgin Islands Legislature, then, as the opinion indicates,
the function and the identifiable funds for such function may be
transferred from one department to another; in that event, the
funds expended for a particular function still will be exactly as
specified by the Legislature. Or, if an appropriation act is
concerned only with a particular board or independent agency and
the funds for its operation, we see no objection, in view of the
Acting Assistant Solicitor's opinion, to reorganization that
places the independent board or agency under the administrative
supervision of another department, provided again expenditures
for the operation of such independent board or agency do not ex-
ceed the appropriation authorized by the Legislature, and no part
of such appropriated funds are expended for any other purpose.

To simplify further, let us outline some hypothetical transfer problems:

(1) Department A and Department B each have received their appropriations in a lump sum. Because of the importance of programs under the jurisdiction of Department B, the Governor would like to transfer some funds from a less essential program of Department A to the more urgently needed program of Department B. Since repeal of section 6110.2 of the Guam Code (pursuant to the holding in the Bordallo case that item veto authority may not be used to veto such repeal), the Governor has no authority to effect the transfer of funds.

(2) Department A has received a total appropriation of $1 million to perform functions X, Y and Z, which are listed in the appropriation act by description only. The Governor proposes to transfer function Y to Department B and to authorize expenditures of $200,000 for this purpose. This also the Governor may not do, because the Legislature did not authorize expenditure of $200,000 specifically for function Y. Conceivably, such expenditure might be less than $200,000 if performed in Department A by the personnel assigned to perform functions X and Z.

(3) The appropriation act for Department A reads as follows:

Function X, 10 persons, appropriation $300,000;
Function Y,  7 persons, appropriation $200,000;
Function Z, 15 persons, appropriation $500,000

The Governor wishes to transfer function Y to Department B and spend $200,000 for the performance of function Y. The reorganization may be effected pursuant to section 9 (c) of the Organic Act and the seven employees thereafter will be "detailed" to Department B and supervised by the head of that Department. Their salaries and any other expenditures for the performance of their function (supplies, equipment, travel) will be paid from funds appropriated to Department A for the performance of function Y. Since there is no authority for the transfer of appropriated funds from department to department, the disbursing officer of Department A would retain control of the funds.

-2-

Hypothetical (3) thus would permit the type of reorganization, with funds retained by the transferor agency, discussed in the last paragraph of your September 29 letter. It must be emphasized, however, that this type of reorganization becomes possible only if the original appropriation act identifies the function and the funds authorized for performance of the function in adequate detail. If, because of the single item-form of Guam appropriation bills, hypothetical (3) is not a realistic method of implementing the types of reorganization needed and otherwise authorized in section 9 (c), then the only practical solution to your problem is to propose both the reorganization, and the rearrangement of executive branch funds necessitated by such reorganization, in the next budget presentation to the Legislature.

Sincerely yours,

(Sgd.) Mrs. Ruth G. Van Cleve

Mrs. Ruth G. Van Cleve
Director

Enclosure

-3-

Westlaw.

48 U.S.C.A. § 1422c  Page 1

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 48. Territories and Insular Possessions
    Chapter 8A. Guam (Refs & Annos)
      Subchapter II. The Executive Branch

→ **§ 1422c. Executive agencies and instrumentalities**

(a) Appointment of heads; establishment of merit system; Civil Service Commission

The Governor shall, except as otherwise provided in this chapter or the laws of Guam, appoint, by and with the advice and consent of the legislature, all heads of executive agencies and instrumentalities. The legislature shall establish a merit system and, as far as practicable, appointments and promotions shall be made in accordance with such merit system. The Government of Guam may by law establish a Civil Service Commission to administer the merit system. Members of the commission may be removed as provided by the laws of Guam.

(b) Powers and duties of officers

All officers shall have such powers and duties as may be conferred or imposed on them by law or by executive regulation of the Governor not inconsistent with any law.

(c) Reorganization

The Governor shall, from time to time, examine the organization of the executive branch of the government of Guam, and shall determine and carry out such changes therein as are necessary to promote effective management and to execute faithfully the purposes of this chapter and the laws of Guam.

(d) Continuation in office of incumbents

All persons holding office in Guam on August 1, 1950 may, except as otherwise provided in this chapter, continue to hold their respective offices until their successors are appointed and qualified.

CREDIT(S)

OCT-23-2008 07:59 FROM:


(Aug. 1, 1950, c. 512, § 9, 64 Stat. 387; Sept. 11, 1968, Pub.L. 90-497. § 4. 82 Stat. 845, Aug. 27, 1986, Pub.L. 99-396, § 18 (a), 100 Stat. 843.)

## HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1968 Acts. House Report No. 1521, see 1968 U.S. Code Cong. and Adm. News, p. 3564.

1986 Acts. Senate Report No. 99-236. see 1986 U.S. Code Cong. and Adm. News, p. 1843.

Amendments

1986 Amendments. Subsec. (a). Pub.L. 99-396 added provisions authorizing the establishment of a Civil Service Commission and the removal of Commission members as provided by the laws of Guam.

1968 Amendments. Subsec. (a). Pub.L. 90-497, § 4(a), struck out requirement that, in making appointments, preference be given persons of Guamanian ancestry and that opportunities for higher education and use of service training facilities be provided to qualified persons of Guamanian ancestry.

Subsec. (b). Pub.L. 90-497, § 4(b), struck out provision authorizing the Governor to appoint or remove any officer whose appointment or removal is not otherwise provided for.

Effective and Applicability Provisions

1968 Acts. Section 4(a) of Pub.L. 90-497 provided in part that the amendment of subsec. (a) by section 4(a) of Pub.L. 90-497 was effective on the date of enactment of Pub.L. 90-497, which was approved Sept. 11. 1968.

Amendment by Pub.L. 90-497 necessary to authorize the holding of an election for Governor and Lieutenant Governor on Nov. 3, 1970, effective Jan. 1, 1970. and all other amendments unless otherwise provided effective Jan. 4, 1971, see section 13 of Pub.L. 90-497, set out as a note under section 1422 of this title.

## LIBRARY REFERENCES

American Digest System

Territories ⊂⊃ 23.
Key Number System Topic No. 375.

# CHAPTER 11
# GOVERNMENT REORGANIZATION

§ 11101.    Reorganization: Public Hearing.
§ 11102.    Employment Security.
§ 11103.    Legislative Approval for Reorganizations;
            Definitions.

## § 11101. Reorganization: Public Hearing.

Any Reorganization Plan for a department, agency or instrumentality of the government of Guam which is proposed by the Governor or by a department, agency or instrumentality must have a public hearing at least thirty (30) days prior to the implementation of such plan. Public notice of such hearing, including publication in a newspaper of general circulation within the Territory and including written notice to each employee of the department, agency or instrumentality in which the plan is to be implemented shall be provided at least fourteen (14) calendar days prior to the holding of such hearing. Employees shall have full opportunity to review the proposed reorganization plan prior to the hearing.

**SOURCE:** Added as GC § 5300 by P.L. 17-81:14.

## § 11102. Employment Security.

No classified employee at the time a reorganization plan is adopted shall be removed from his or her position or downgraded as a result of any reorganization undertaken pursuant to the plan, except pursuant to reduction in force procedures contained in 4 GCA § 4207, Director of Administration Rules, and Public Law 27-05.IV:19.

**SOURCE:** Added as GC § 5301 by P.L. 17-81:14. Amended by P.L 27-34.2. Effective January 1, 2006, reference to the "Civil Service Commission," amended to "Director of Administration" pursuant to P.L. 28-68:IV 45 (Sept. 30, 2005).

## § 11103. Legislative Approval for Reorganizations; Definitions.

(a) Legislative approval. Any proposed reorganization plan for a department, agency or instrumentality of the government of Guam (collectively 'agency') shall require the approval of the Legislature prior to its implementation, and such approval of any reorganization plan that

1

increases the number of employees shall be necessary prior to a request to the Legislature to appropriate funds for the additional positions.

(b) Definition. For purposes of this Chapter, *reorganization* means:

(1) The transfer of the whole or any part of any agency, or of the whole or any part of the functions thereof, to the jurisdiction and control of any other agency:

(2) The abolition of all or any part of the functions of any agency;

(3) The consolidation or coordination of the whole or any part of any agency, or of the whole or any part of the functions thereof, with the whole or any part of any other agency or the functions thereof;

(4) The consolidation or coordination of any part of any agency or the functions thereof with any other part of the same agency or the functions thereof;

(5) The authorization of any non-elective officer to appoint any individual to perform any of his functions;

(6) The abolition of the whole or any part of any agency which agency or part does not have, or upon the taking effect of a reorganization plan will not have, any function;

(7) The establishment of a new agency to perform the whole or any of the functions of an existing agency or agencies; or

(8) The use of a person under contract to perform functions which regularly are performed or budgeted to be performed by employees appointed under the merit system.

**SOURCE:** Added as GC § 5302 by P.L. 20-65:12

**COMMENT:** Compare Organic Act of Guam, 48 U.S.C.A. § 1422c(e), which states:

(c) **Reorganization.** The Governor shall, from time to time, examine the organization of the executive branch of the government of Guam, and shall determine and carry out such changes therein as are necessary to the purposes of this chapter and the laws of Guam.

----------

2

5 GCA GOVERNMENT OPERATIONS
CH. 11 GOVERNMENT REORGANIZATION

— Chapters 12-19 are left blank intentionally. —

Case 1:01-cv-00041   Document 523   Filed 10/23/08   Page 31 of 31