# UNITED STATES DISTRICT COURT
# TERRITORY OF GUAM

| | |
|---|---|
| J.C., a person with a disability, *et al.*,<br>　　Plaintiffs,<br>vs.<br>LOURDES A. LEON GUERRERO, in her official capacity as Governor of Guam, *et al.*,<br>　　Defendants. | Case No.:　CV 01-00041<br><br>**ORDER RE: DEFENDANTS' MOTION TO VACATE PERMANENT INJUNCTION** |

The matter before the Court is Defendants' Motion for Relief from Judgment, made pursuant to Federal Rule of Civil Procedure 60(b). (Dkt. No. 1265 ("Motion").)

## I. BACKGROUND

On July 25, 2001, two Plaintiffs, J.C. and S.F., brought the present action for declaratory and injunctive relief. On November 8, 2001, the complaint was amended to add a third plaintiff, J.M. All three Plaintiffs have special needs due to various diagnosed psychological conditions, including psychosis, dementia with behavior disturbance, and bipolar disorder. (Dkt. No. 276 (Findings of Fact and Conclusions of Law) at 3.) Plaintiffs' claims were "based upon an alleged failure of Defendants to provide appropriate community-based living services." (*Id.* at 2.) The amended complaint sought declaratory relief and an injunction to provide Plaintiffs with "effective home and community-based services ... in an integrated

community setting which is appropriate to [their] individual needs." (Dkt. No. 94 ("FAC") at 21.)

A bench trial was conducted in 2004. The evidence at trial showed that Plaintiffs had all been involuntarily committed at various times to the Adult Inpatient Unit ("AIU") of the Department of Mental Health and Substance Abuse ("DMHSA"). (Findings of Fact and Conclusions of Law at 3.) Plaintiffs' treating psychiatrists "recommended that [Plaintiffs] be placed in a community-based residential facility appropriate to their individual needs and circumstances," opining that "the AIU is an inappropriate placement for Plaintiffs."[1] (*Id.* at 4-5.) However, Plaintiffs remained at the AIU due to a failure by the Department of Integrated Services for Individuals with Disabilities ("DISID") to secure sufficient community-based facilities to house all individuals warranting such placement. (*Id.* at 6-8.)

Instead, Plaintiffs were placed on a "waiting list" for placement in appropriate community-based facilities. However, the Court found that "Defendants' purported waiting list is simply a list of persons not receiving services and [that] an individual is only taken off the list when a court order requires the individual's placement elsewhere." (*Id.* at 8.) Indeed, "Defendants themselves testif[ied] that all of the individuals who are currently in an inappropriate placement are in critical need of placement elsewhere." (*Id.*)

The Court's conclusions based upon the evidence at trial included the following:

1. Defendants had failed to provide reasonably safe conditions of confinement for Plaintiffs committed to state psychiatric hospitals.
2. Plaintiffs had been subjected to unreasonable bodily restraints.

---

[1] The AIU is a "24-hour locked facility with sixteen beds," in which Plaintiffs were placed with "individuals found guilty of crimes by reason of mental defect." (Findings of Fact and Conclusions of Law at 4.) While detained there, Plaintiff J.C. was "bitten twice by other clients" and was "sexually abused by another male client." (*Id.* at 4-5.)

3. Defendants had failed to provide Plaintiffs with minimally adequate habilitation that is reasonable in light of the circumstances.
4. Defendants had consistently failed to implement the recommendations of the State's treating professionals.
5. Defendants failed to provide the training necessary to insure Plaintiffs' safety and to facilitate their ability to function free from bodily restraints.
6. Defendants' decision to place nearly all individuals with mental disabilities in general psychiatric wards—instead of in the community-based programs recommended by the State's treating professionals—and to seclude and mechanically restrain them, is such a substantial departure from accepted professional judgment, practice, and standards as to demonstrate that the decision was not a function of independent professional judgment.

Findings of Fact and Conclusions of Law at 13-14.

Based on these conclusions, the Court found in favor of Plaintiffs and entered a permanent injunction. (Dkt. Nos. 277, 307.) This original permanent injunction focused primarily on ensuring Plaintiffs' "safety, freedom from undue restraint, and treatment under safe conditions," as well as eliminating the "waiting list" for appropriate placements, which posed the greatest threat to the former goals. (*See* Dkt. No. 277 at 2 (capitalization altered).)

On February 3, 2004, a fourth Plaintiff, R.A., filed a separate action seeking relief similar to that sought by Plaintiffs in this action. The parties subsequently entered into a stipulation that R.A. was similarly situated to the Plaintiffs in this action. On October 6, 2004, R.A.'s action was consolidated with this action, and this action's findings, conclusions, and orders were made applicable to R.A. (Dkt. No. 288.) The permanent injunction was subsequently amended on June 30, 2005. (Dkt. No. 307 ("Amended Permanent Injunction").)

Although the permanent injunctions originally applied only to the named Plaintiffs and focused primarily on the elimination of waiting lists for appropriate placements, the parties agreed that any comprehensive plan for implementing the injunctions' directives "must address broader issues than are discussed in the Court order." (Dkt. No. 340 ("Stipulation") at 3.) Accordingly, "[w]ith an eye toward developing an amalgam of programs and services, along with modifying pre-existing operations to best provide the service array contemplated by this Court," the parties agreed that Defendants would "attempt to meet, if not exceed, the expectations delineated in the Permanent Injunction." (*Id.*) The parties therefore agreed that "Defendants shall take ... actions to obtain JCAHO [Joint Commission on the Accreditation of Healthcare Organizations] accreditation for both current and future programs and services." (*Id.* at 2.) The Court later approved the parties' stipulation to implement this plan of action. (*See* Dkt. Nos. 433, 448.)

## II. LEGAL STANDARD

Pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding ... [if] applying it prospectively is no longer equitable." As the Supreme Court has observed, "Rule 60(b)(5) serves a particularly important function in what we have termed 'institutional reform litigation.' For one thing, injunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances ... that warrant reexamination of the original judgment." *Horne v. Flores*, 557 U.S. 433, 448 (2009) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)) (internal citations omitted). Additionally,

> the dynamics of institutional reform litigation differ from those of other cases. Scholars have noted that public officials

sometimes consent to, or refrain from vigorously opposing, decrees that go well beyond what is required by federal law....

Injunctions of this sort bind state and local officials to the policy preferences of their predecessors and may thereby "improperly deprive future officials of their designated legislative and executive powers."

States and localities "depen[d] upon successor officials, both appointed and elected, to bring new insights and solutions to problems of allocating revenues and resources." ....

It goes without saying that federal courts must vigilantly enforce federal law and must not hesitate in awarding necessary relief. But in recognition of the features of institutional reform decrees, we have held that courts must take a "flexible approach" to Rule 60(b)(5) motions addressing such decrees. A flexible approach allows courts to ensure that "responsibility for discharging the State's obligations is returned promptly to the State and its officials" when the circumstances warrant.

*Id.* at 448-50 (internal citations omitted).

### III. DISCUSSION

The Court finds the following facts particularly pertinent to Defendants' motion:

1. The Guam Behavior Health and Wellness Center (formerly the Department of Mental Health and Substance Abuse) has increased the number of community-based facilities available for housing individuals with special psychiatric needs.

2. There is no longer a "waiting list" for placement in appropriate community facilities, and individuals with mental disabilities are no

longer detained in highly restrictive and unsafe environments simply by virtue of the lack of available appropriate facilities to house them.

3. The Center's previous issues in obtaining an adequate supply of medications for its clients have been substantially rectified by the hiring of a full-time pharmacist.

4. The Center has achieved accreditation by the Commission on Accreditation for Rehabilitation Facilities ("CARF").[2]

5. The Center has also instituted Multi-Disciplinary Treatment Teams ("MDTT") to conduct an interdisciplinary evaluation of each client in order to develop and implement an individualized support program for each client.

6. Although recruitment and training remains a challenge for the Center, significant advances have been made in this area, and Defendants appear committed to further improving their procedures for recruiting and training qualified staff members.

7. The Center is under the leadership of a new director, who appears dedicated to working with the newly elected governor's administration to maintain the progress that has been made by the Center thus far and to make further improvements to the Center's operations where needed.

In light of these findings, the Court concludes that the time has come for the responsibility of discharging the State's obligations to be returned to the State and its officials. Although much work remains to be done in improving the services provided by the Center, much progress has been made. Most importantly for purposes of the present motion, the violations relating to the "waiting list" for community-based placements—which formed the core of the complaint in this

---

[2] The Court notes Plaintiffs' concern that CARF accreditation may not be as prestigious or demanding as JCAHO accreditation—an issue on which the Court takes no position—but believes that CARF accreditation nonetheless evidences substantial progress toward the Center's goal of providing adequate care for all its clients.

6

action and were the primary focus of the Court's findings following trial—have been effectively remedied.³

The Court does not intend to suggest that the path forward for the Center is simply one of maintaining course. There are aspects of the Center's operations in clear and urgent need of improvement. But the situation now bears little resemblance to the one demonstrated at trial. When this case was initially litigated, the Court was confronted not only with truly egregious violations of federal law, but with directors that failed to see a problem or any need for change. The Center is now under new direction, and although fulfilling the Center's obligations to its clients will require hard work and diligence, the Court is convinced that the Center's new leadership is mindful of its duties and responsibilities and will continue to work toward the goals set forth in the permanent injunction.

## IV. CONCLUSION

For the foregoing reasons, the permanent injunction in this action, including all subsequent amendments thereto, is **VACATED**.

**IT IS SO ORDERED.**

DATED: December 2, 2019

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

³ The Court therefore need not determine whether all possible violations of federal law have been remedied; it suffices to note that the violations which served as the basis for granting injunctive relief in the first instance have been remedied.